## JUDGE OF PROBATE *v.* STONE.

The right to close depends not upon whether there is any affirmative issue on the plaintiff, but whether the primary burden of proof is on him.

Though the burden of proof may change ever so often during the trial upon the different issues, yet the party who has the primary burden of proof resting on him has the right to close, and an error in the ruling of the court in this respect is good ground of exception, and a sufficient cause to set aside a verdict.

To determine which party is to begin (and of course which shall close), consider which would get the verdict if no evidence were given on either side, and the right to begin is with the one who would in that way lose his case.

It is within the discretion of the court to rule out evidence after it has been admitted, with proper directions to the jury, but ordinarily such evidence should be ruled out before the closing arguments of the counsel and the charge of the court to the jury.

Where A, by fraud, obtained an assignment from B of all his interest in a large estate of which A was administrator, for $4,000, and B, without discovery of the fraud, spent all the money he received, and died, his administrator, on discovery of the fraud, may rescind the contract ; and if A has in his hands of the said estate which he administers, a larger amount which would belong to B than said $4,000, the administrator of B may rescind the assignment made by B to A, without first paying back the $4,000 ; leaving A to deduct the amount he paid to B for the assignment from the money in his hands belonging to B ; and B's administrator may bring suit against A, and recover the balance in his hands, after demand.

Nor does it make any difference in what form the demand is made, if the plaintiff intends to rescind the contract and avoid the assignment, and the defendant so understands it.

So if B was *non compos mentis* at the time he made the assignment, and never ratified the same during his life, his administrator may rescind the same, and in either case it need not appear that there were any creditors of B's estate.

DEBT on bond given by the principal defendant, as administrator of the estate of one Jedediah Cooper, who died intestate July 28, 1858. The action was brought for the benefit of William H. Wood, administrator for one Winsor Cooper. It appeared that Winsor Cooper was a nephew of Jedediah Cooper, and entitled to one equal third part of his estate, which third part was some twenty-five thousand dollars. Mary Cooper was heir of one third, and the children of Charlotte Stone, mother of the defendant, were heirs of the other third. After Winsor Cooper died, in October, 1858, the said William H. Wood was appointed his administrator, and he obtained a decree from the court (39 N. H. 572) ordering the distributive share of Winsor Cooper on the first dividend of Jedediah Cooper's estate to be paid to him, the said Wood, as administrator, without prejudice to the rights of the defendant, Chauncey H. Stone, to retain the same under an assignment of said distributive share from said Winsor Cooper to him, the said Stone. This action is brought to recover the first dividend upon the settlement of the administrator's first account in the court of probate, amounting to $7,345.62.

It was admitted that there had been a previous demand by the administrator before action brought.

The defendant pleaded in bar that Winsor Cooper, in his life time, on the 30th of July, 1858, assigned to him all his, the said Winsor Cooper's rights in said estate, by deed of assignment of that date. The plaintiff replied, (1) that the assignment was not the deed of Winsor Cooper, under which replication he offered proof that he was *non compos metnis ;* (2). that said supposed deed was obtained by the fraud and covin of the said Chauncey H. Stone.

At the trial the defendant produced one Frost, who was one of the subscribing witnesses to the assignment, and who on the cross-examination testified that the consideration of the assignment was $500 in money down, and $3,500 in four notes, of $875 each, payable in one, two, three and four years from date, without interest, and testified as to what took place at the time of the execution of the assignment, and the conversation of the parties concerning the same, and the circumstances accompanying the execution and delivery of the deed, and as to the said Winsor Cooper's condition and mental capacity at the time. Both parties at the trial offered evidence bearing upon the question whether said Cooper was *compos mentis,* showing his health, acts, habits and conversation, both before and after the date of the assignment. The plaintiff called George Wood, who testified as to Winsor Cooper's acts and declarations on the evening before and the morning of the day on which the assignment was executed, who stated that it was about 9 o'clock in the evening, and dark, when Winsor got home that night. He

was very much excited; hardly knew what he was about.  He talked about Jedediah's estate.  I tried hard to make him understand that he was heir to one third of it.  He insisted that he was not heir to but one sixth.  Howe told him he had better not sell till he knew what it was.  [Then Winsor said he was afraid he should have a guardian put over him and that Stone thought so, and that he had better sell and put his money in his pocket.  He said Stone came part way back with him and made him an offer for his share in that estate—offered him $6,000.]  He said he thought he would sell, then said he thought he would not; we tried to make him understand that there was a great property, and his share was one third, but we could not make him understand it.  Howe told him he had better not sell till he knew what it was.  I told him his share would be $26,000.  He said it would be only $7,000.

The defendant objected to so much of the above conversation as is included between brackets.  The plaintiff offered the entire evidence as to the acts, conduct and conversation of Winsor Cooper, not to show what the contract or negotiations were, but only as tending to show what his mental condition was.  The court admitted the evidence, and the defendant excepted.

Several other witnesses testified to Winsor Cooper's statements about the time of the assignment, in which he spoke of what Stone had said and done; these portions of their testimony were objected to, and admitted, subject to the defendant's exception upon the same ground as above.  The plaintiff's witness testified that he had a conversation with Frost, after the assignment, who said that $4,000 would be as good to Winsor Cooper as more; that it would not last him long, as he did not consider him competent to take care of it. This evidence was offered to contradict Frost, and admitted by the court, subject to the defendant's exceptions.

The court, at the close of their charge, instructed the jury as to the evidence offered by the plaintiff, embracing all the statements of Winsor Cooper of every kind, as made by him as to the assignment itself, or the making of it, or the circumstances or inducements under which he made it, and what he said the defendant had stated were to be disregarded by the jury, and not to be considered by them in examining or weighing the evidence; that the jury were also to disregard the evidence offered to contradict Frost, and were not to consider it in examining and weighing his evidence.

Both parties claimed the right to open and close, but the court, without settling the question, allowed the defendant to open by his evidence.  The deed of assignment having been offered and proved by Frost, he then rested.  The plaintiff then proceeded to maintain his issues.  After the evidence had been mostly offered on both sides, the question was renewed, and the point was fully argued. The court then ruled in favor of the right of the plaintiff to close, and the defendant excepted.

Upon the issue whether the deed was obtained by fraud, the defendant requested the court to instruct the jury that a party seeking in such a case to rescind a contract, must, as in the case of rescinding any other contract for fraud, pay or tender to the other

party the consideration money received by him, or at least offer to allow it by way of set-off; which request the court declined to give in this form.   The defendant also requested the court to instruct the jury that an administrator, seeking to avoid such a contract for the benefit of creditors, must prove that the property sought to be recovered is needed for the payment of just debts; which request the court declined to give.   The defendant also requested the court to instruct the jury that if the defendant did not say or do any thing calculated to mislead Winsor Cooper in regard to the existence of a will on the part of Jedediah Cooper, it was all that was required of him, unless Winsor Cooper requested him to communicate what he knew, or made some inquiry of him on the subject.   The court declined to instruct the jury in this form, but among other instructions which were not excepted to, did instruct them as follows, namely:

" The plaintiff puts this part of the case involving the issue of fraud solely upon the fact that Chauncey H. Stone represented to Winsor Cooper that he (Stone) did not know whether Jedediah Cooper had made a will or not, and represented that if he had, then Winsor would probably receive nothing from the estate, and so the $4,000 paid by him (Stone) would be lost.   The plaintiff claims that this representation was material, and was absolutely false, and that Stone at that time had positive knowledge that there was no will. The court instructs the jury that if this representation was material, and false and fraudulent, and thereby Winsor Cooper was induced to make the assignment and take money and notes in payment of his share to the amount of $4,000, then Winsor Cooper would not be required by law to rescind the contract until he discovered the fraud; no act of his in negotiating or collecting the notes would be a ratification of the voidable assignment; that the administrator of Winsor Cooper would have a right to rescind and avoid the assignment, if he discovered the fraud after the decease of Winsor Cooper; that if, when he discovered it, it was impossible to tender back the notes, because they had been negotiated or collected by Winsor Cooper in his life time, so that neither the notes nor any part of the proceeds came into the possession of the administrator, then he would not be required to do an impossibility, by tendering back the notes in order to disaffirm or avoid the assignment; that under such circumstances the administrator, if he had never in any way affirmed or ratified the transaction, could disaffirm and avoid the deed by giving notice to the defendant, and demanding from him the distributive share of Winsor Cooper in the defendant's hands; that if, at the time of disaffirmance and rescission, the defendant had in his hands, in money, as such distributive share, a sum larger than the amount of the consideration of the assignment, then it would not be necessary for the administrator to tender said amount in money, because the rights of the defendant and the amount to be paid by him are under the control of the court when the penalty of the bond is to be chancered; that it was not necessary for the administrator to show that there were debts due from Winsor Cooper, in order to authorize him to set aside the assignment obtained by

fraud, for the administrator could disaffirm it on the representation of his heirs, in the same manner that Winsor Cooper could do if alive."

To all these rulings, and refusals to rule as requested, the defendant excepted.

The court directed the jury that they might answer the two following questions, namely: Was Winsor Cooper, at the time of the execution of said deed of assignment to said Chauncey H. Stone, insane?

Was the said deed of assignment procured from said Winsor Cooper by the fraud and covin of said Chauncey H. Stone?

To the first question the jury answered they were unable to agree.

The second they answered affirmatively.

A verdict was therefore rendered for the plaintiff; which the defendant moved to set aside, and for a new trial; and the questions of law were reserved.

*Wheeler & Faulkner*, for the defendant.

1. The defendant was entitled to the close of the case. By his plea he admitted the plaintiff's whole cause of action, and attempted to avoid it by the introduction of new matter. The burden of proof devolved on him in the first instance. *Seavey* v. *Dearborn*, 19 N. H. 351; *Thurston* v. *Kennett*, 32 N. H. 151; *Brooks* v. *Barrett*, 7 Pick. 100; *Fowler* v. *Coster*, 3 C. & P. 463. If the first replication stood alone it would not be claimed that the plaintiff was entitled to the close. The matter set forth in the plaintiff's second replication might as well have been offered in evidence under the first. Can the plaintiff by filing unnecessary replications deprive the defendant of an advantage to which he would otherwise be entitled?

2. The court erred in admitting the testimony of Wood of declarations of Winsor Cooper as to negotiations with Stone before the assignment, and of other witnesses of Winsor's declarations as to the terms of the trade, after it was made. The plaintiff stands in the place of Winsor Cooper, and his declarations and statements in regard to the assignment were mere declarations of a party in his own favor, and on that account clearly incompetent. They were, moreover, declarations tending to vary and contradict the terms of a written instrument.

3. It is no answer to these objections to say that the court, at the close of the charge, informed the jury that they might disregard all this incompetent evidence. It was then too late to undo the mischief already done by the admission of such evidence. After incompetent evidence has been objected to, and then ruled in and commented upon by both sides and by the court in the close, a subsequent direction to the jury to disregard the evidence comes too late. It is an abuse for counsel to insist upon the admission of incompetent evidence, to argue it to the jury as important evidence for their consideration, and then, after it has produced its full natural effect upon their minds, to request the court to instruct them

that they should not allow it to influence their decision. The counsel also have a right to understand before their task is finished what is to be regarded as evidence in the case, and if the course pursued in this case were to be adopted in practice, very serious embarrassments would arise. They have a right to treat that as evidence in the case which was in against their objection when the argument of the case was closed. *Tenney* v. *Evans*, 13 N. H. 462.; *Cilley* v. *Bartlett*, 19 N. H. 313; *Winkley* v. *Foye*, 28 N. H. 519.

4. The testimony as to Frost's declarations was improperly admitted. Frost's opinion as to Winsor's mental capacity, the value of money to him, his ability to make a trade, or to keep or take care of his money, was immaterial and incompetent; and if on cross-examination by the plaintiff he expressed an opinion on these subjects, it was not competent for the plaintiff to contradict him. *Commonwealth* v. *Buzzell*, 16 Pick. 157; *Harrington* v. *Lincoln*, 2 Gray 133; *Seavey* v. *Dearborn*, 19 N. H. 355; *Combs* v. *Winchester*, 39 N. H. 13. The remarks made as to the instructions finally given in regard to the testimony of Wood and others, apply with still greater force to this evidence. Frost was the main witness for the defense—the only subscribing witness produced of the assignment. The prejudice naturally created in the minds of the jury by these contradictions could not be removed by a statement in effect that the particulars in which he might appear to have testified falsely were not material. Notwithstanding this direction, his testimony as to other matters could not have received from the jury the same credit as if he had stood uncontradicted.

5. If the assignment was procured by fraud, neither Winsor nor his administrator could rescind the contract without an offer to return the notes, if unpaid, or repay the money, or at least to allow the amount of the money and notes in set-off to the claim. No such offer was made, but an unconditional demand for the whole of Winsor Cooper's distributive share. It is no answer to this objection to say that the court may hereafter secure to the defendant the substantial justice which the plaintiff has neglected to offer. The plaintiff can not treat the bargain as both valid and invalid. So long as he retains the consideration for which Winsor parted with his property, and neglects to restore it to the defendant, so long must the assignment be considered as valid. It was in his power to place the defendant in the same condition substantially in which he was before the assignment, by repaying the consideration, or offering to allow it on settlement. 2 Pars. Cont. 277; *Selway* v. *Fagg*, 5 M. & W. 83; *Concord Bank* v. *Gregg*, 14 N. H. 331; *Webb* v. *Stone*, 24 N. H. 282; *Allen* v. *Webb*, 24 N. H. 278. There is no analogy between this case and those in which a creditor is permitted to recover the unpaid balance of a debt compromised through fraud. *Pierce* v. *Wood*, 23 N. H. 519.

6. The jury should have been instructed that an administrator, seeking to avoid a contract for the benefit of creditors, must prove that the property sought to be recovered is needed for the payment of just debts. The administrator claimed in this case to represent creditors as well as the heirs.

*Carleton, Merriam, Vose* and *Durant,* for the plaintiff.

1. As to the right to make the closing argument, the plaintiff submits that according to the pleadings and according to the practice of our courts, he had the right of opening and closing the case. *Chesley* v. *Chesley,* 37 N. H. 229. If the plaintiff has the affirmative of either issue, he is entitled to the opening and close. The plaintiff did have the affirmative, whether we regard the form or the substance of the pleadings. By the replication that the assignment in question was obtained by the fraud and covin of Chauncey H. Stone, the plaintiff admitted the execution of the assignment, and took upon himself the burden of proving the fraud. *Belknap* v. *Wendell,* 21 N. H. 175; *Buzzell* v. *Snell,* 25 N. H. 474–478; *Bills* v. *Vose,* 27 N. H. 212–215; *Tappan* v. *Jenness,* 21 N. H. 282; *Thurston* v. *Kennett,* 22 N. H. 151; *Curtis* v. *Wheeler,* 4 C. & P. 196; *Robinson* v. *Hitchcock,* 8 Met. 64.

2. Evidence of the acts and conversations of Winsor Cooper at and about the time of the transaction was rightly admitted for the purpose of showing whether or not he was of sound mind. It is impossible to prescribe limits for this kind of evidence. It must be governed very much by the discretion of the presiding judge. The plaintiff submits that the only right of the defendant was that the jury should be cautioned not to take any of these statements of Winsor Cooper, admitted to show the state of his mind, as facts or as evidence of other facts. This right was fully protected; first, by the offer of the plaintiff, as stated in the exceptions, and secondly by the repeated and explicit instructions of the court on this point. 1 Stark. Ev. 50; 1 Greenl. Ev. 176, 177, 178, secs. 100, 101.

3. Whether the evidence was rightly admitted or not becomes entirely immaterial, because the court plainly excluded the evidence from the consideration of the jury, and instructed them to pay no heed to it whatever. *Hamblett* v. *Hamblett,* 6 N. H. 345–349; *The People* v. *Parish,* 4 Denio 153–156; *Unangst* v. *Kræmer,* 8 W. & S. 391–401; *Thomas* v. *Henderson,* 27 Ala. (N. S.) 523–529; *Marshall* v. *Flinn,* 4 Jones 199; *Deerfield* v. *Northwood,* 10 N. H. 271.

4. But the evidence admitted was in itself legal and competent evidence. George Wood related a conversation with Winsor Cooper, which took place in the evening after the funeral of his uncle, and after C. H. Stone had commenced negotiations for the assignment. This evidence was material in many views, and tended to prove Cooper's delusion upon the subject, that some people at Fitchburg were trying to get his property away from him and put him under guardianship. The whole conversation had a tendency to prove that Winsor Cooper was not of sound mind. Thus the statement that Stone had offered him $6,000 was either correct or not correct. If not correct, then Winsor Cooper's mind was so weak that he was not able to remember for one hour the price which had been offered him for his share of the estate. If correct, then Winsor Cooper sold the estate the next morning for 4,000 for which he had been offered $6,000 the night before. In another view this part of the conversation is material. He was told, the night after his uncle's funeral, that he was an heir to a great estate, of $26,000; he was

urged not to sell it, but to wait like a reasonable man, and ascertain what his share would be, and not accept the first offer made for it. The portion of the evidence which is objected to is that by which we learn that the offer which he foolishly and unreasonably wished to accept was only $6,000. So with regard to the reason which Winsor gave for wishing to sacrifice this great estate for $6,000. Can it be said that it is the act of a person of sound mind to make such a bargain for fear that a guardian would be put over him, or for the sake of putting the money in his pocket?

5. The evidence to contradict the substance and effect of Frost's evidence was admissible. He attempted to make it appear that the bargain was fairly made, was conducted in a usual and ordinary manner, was made intelligently by Winsor Cooper. Frost also testified, on the direct examination resumed, that at the time of making the bargain, Cooper was connected and intelligent in his conversation and manner; that he made the bargain prudently, counted his money carefully, and was throughout the transaction careful and intelligent. The evidence contradicted the whole tenor and effect of his evidence.

6. The court ruled correctly upon the question arising out of the alleged fraud in procuring the deed in question. The plaintiff's case upon this point was that Chauncey H. Stone, who had been at the house of the deceased, and in confidential communication with him, knew that there was no will; that is, he knew that Winsor Cooper's share of the estate was $25,000, and that his deed would immediately convey it. With this knowledge he represented to Winsor Cooper that he (Stone) did not know whether Jedediah Cooper had made a will or not, and represented, if he had, then Winsor would probably receive nothing from the estate, and so the $4,000 paid by him (Stone) would be lost.

7. The ruling, as asked for by the defendant, directly tended to raise a false issue. The defendant's pretence was, that when he and Winsor Cooper made this bargain they were both in equal ignorance. The plaintiff, on the contrary, claimed and proved that Stone, at the time of the bargain, had knowledge in reference to which he deceived Cooper.

8. Upon the question of the right to rescind this contract, the instructions given by the presiding judge were correct. For the purpose of the argument it might be conceded that if Winsor Cooper, immediately after the bargain, and while he held Stone's notes and money, had discovered the fraud, he would have been obliged to tender back the notes and money, and demand a reconveyance of the property. But time had changed the relations of the parties and the state of facts. The notes had been paid and the money spent by Winsor Cooper, who died without discovering the fraud and without ratifying or annulling the bargain. The administrator did not receive any of the proceeds of the transaction, and never ratified it. In the mean time the defendant, by his own voluntary act, had made a material change in the property assigned to him. He had become administrator of the estate, and had changed the property into money; therefore when Winsor Cooper's admin-

istrator discovered the fraud and took the necessary steps to disaffirm the transaction, neither of the parties was in a condition to restore the property in specie.   *Warner* v. *Daniels*, 1 W. & M. 90.

The notes which Winsor Cooper received had been collected and the money spent.   The property which Chauncey H. Stone received had been converted into money, therefore the annulling of the bargain and the restoration of each party to their previous positions was impossible, and could only be compensated for by the payment of money.

The plaintiff therefore submits that as the case finds, at the time of the rescinding of the contract, the defendant had in his hands more money of the plaintiff than the whole consideration of the assignment, it was unnecessary to tender back that consideration in money.   Notice of the disaffirmance and rescission, and the demand of the distributive share, were all that were necessary.   *Warner* v. *Daniels*, 1 W. & M. 90 ; *Hallett* v. *Collins*, 10 How. 174–187 ; *Page* v. *Wood*, 23 N. H. 520 ; *Masson* v. *Bovet*, 1 Denio 69 ; *Long* v. *Long*, 9 Md. 348.   As by the act of the defendant, the only thing which could be done by either was to-adjust, in money, the void contract ; it was not necessary for the plaintiff to tender money where more money was due him.   In the language of this court, " It would be a singular doctrine that before he can institute a suit for the amount out of which he has been defrauded, he must first repay that which was honestly his due, and which, so far as he was concerned, he has honestly received."   *Pierce* v. *Wood*, 23 N. H. 520, 534.   The case of rescinding contracts when notes are given by the purchaser, are much stronger that the present.   It is not necessary to tender back the notes, as the production of them at the trial is sufficient.   It is suggested by the defendant that when notice of the rescission of the transaction was given, the plaintiff made an unconditional demand for the distributive share.   The answer is, that if the defendant had the right to keep back the $4,000 of consideration money, he was legally bound to pay the remainder, and could have done so.   A demand for a larger sum than the plaintiff has a right to claim does not excuse the defendant from paying what he is justly bound to pay.

9. The peculiar condition of this case removes it from the ordinary position of the question of the rescinding a contract for fraud. The defendant is here in the Supreme Court of Probate, called upon, as an officer who has assumed a trust under this court, to perform the duty which he, as a *quasi* officer of the court, has voluntarily assumed.

An administrator is " trustee for the benefit of those entitled to distributive shares in the estate," and he is responsible for property fraudulently obtained by him in his private capacity.   *Parsons* v. *Parsons*, 9 N. H. 309–320 ; *Shears* v. *Rogers*, 3 B. & Ad. 362 ; *Stephens* v. *Barnett*, 7 Dana 257–262 ; *Smith* v. *Pollard*, 4 B. Mon. 66 ; *Bethel* v. *Stanhope*, 1 Cro. Eliz. 810.

The plaintiff submits that after the defendant voluntarily assumed the trust of administrator of Jedediah Cooper, he no longer was in a position in which he could act as a stranger or adverse party to

Winsor Cooper. He held Winsor Cooper's distributive share of the estate in trust. Knowing the fraud by which he had obtained it, he was bound himself to rescind the contract and restore the property. And if Winsor Cooper, in his lifetime, had obtained the decree under which the present suit is prosecuted, the action could have been maintained without a previous tender, on final proof of the fact that the assignment was void, because obtained by fraud. *Holland* v. *Cruft*, 20 Pick. 321, 331, 338.

As the question is before the court having full equity powers, and the rights of the parties are to be adjusted when the bond is chancered, the whole question of tender becomes immaterial. *Hallett* v. *Collins, ubi sup.*

SARGENT, J. In *Bump* v. *Smith*, 11 N. H. 48, where the general issue was pleaded, with a brief statement of a justification, it was held that the general issue imposed upon the plaintiff the burden of making out his whole case before the matter in the brief statement comes in issue at all. The same is true where special pleas are pleaded with the general issue, and hence it has always been the practice for the plaintiff's counsel to open and close when the general issue is pleaded, whatever other matters may be pleaded specially, or given notice of by brief statement; *Toppan* v. *Jenness*, 21 N. H. 232; *Ayer* v. *Austin*, 6 Pick. 225; *Belknap* v. *Wendell*, 21 N. H. 175; where it is said by *Gilchrist*, C. J., that the point in issue is to be proved by the party who asserts the affirmative; and where the affirmative is upon a party, he has the right to open and close; and that this is the case, though the burden of proof may shift in the course of the trial; that is, the party who has the first affirmative issue to prove, who has the burden of proof on him in the first instance, is to open and close. *Russ* v. *Gould*, 5 Greenl. 204, is to the same effect.

Whenever the general issue is pleaded, with a special plea of justification, or the like, then the burden of proof shifts in the course of the trial. The plaintiff must first prove his case, so as to entitle him to recover on the general issue. If he did not do this, the defendant would be entitled to a verdict on that issue, and he need not then trouble himself to prove his justification. But the primary burden being on the plaintiff, he first proves his case. When this is done, the verdict would be for him on that issue, unless the defendant proved his justification. The burden of proof then shifts and the defendant has the affirmative of the second issue; still the plaintiff must open and close, because the primary burden of proof is on him; *Brooks* v. *Barrett*, 7 Pick. 100; *Comstock* v. *Huldyme*, 8 Conn. 261; in which *Williams*, J., says, "the plaintiff begins, and has the right of reply in all cases where the defendant's pleadings or any part of them deny the whole or any part of the plaintiff's pleadings, so as to leave any affirmative allegation on his side to be established by proof." In *Thurston* v. *Kennett*, 22 N. H. 151, the general issue was pleaded, and the plaintiff opened and closed. The same was true in *Buzzell* v. *Snell*, 25 N. H. 478, though there the defendant on trial offered to make certain admissions, not made in his

pleadings, for the purpose of gaining the right to open and close; but it was settled that this right must depend upon the form of the issue raised by the pleadings; and the general issue throwing the primary burden of proof on the plaintiff, he had also the close. In the head note of this case, it is said that if the affirmative of any issue joined upon the pleadings is upon the plaintiff, he has the right to open and close; but this is not authority any farther than it is founded upon the facts in the case; and the case settles only that when the defendant's pleadings, or any part of them, deny the whole or any part of the plaintiff's pleadings, so as to leave any affirmative allegation on his side first to be proved, that he shall open and close.

We find a similar expression to the above head note in 1 Greenl. Ev., sec. 74: "If the record contains several issues, and the plaintiff holds the affirmative of any one of them, he is entitled to begin;" citing a case of slander for charging the plaintiff with the commission of a crime, when the defendant pleaded the general issue, with a justification. This statement, like the head note in *Buzzell* v. *Snell*, has reference to the issues joined on the defendant's pleadings to the plaintiff's declaration, and so far they are authority, and no farther. The head note in *Bills* v. *Vose*, 27 N. H. 212, has a similar statement; but an examination of the case shows that all that was settled was, that however frequently the burden of proof had been changed by the pleadings, still, if the affirmative of the issues finally joined rested on the plaintiff, he should open and close. The case was replevin for animals; the defendant avowed the taking, and justified on the ground that the animals were taken *damage feasant.* The plaintiff, by his plea, admitted all this, but replied a tender of damages and costs. The defendant denied the tender, and on that, issue was joined. The defendant, also, alleged that there was a pound breach and a retaking of the cattle, and that additional costs were incurred which were not included in the sum tendered. The plaintiff rejoined that all lawful additional fees were included in said tender. This was denied by the defendant, and issue was joined; thus leaving the affirmative of the only two issues in the case upon the plaintiff.

*Chesley* v. *Chesley*, 37 N. H. 229, was where there were no proper pleadings in the case. Each party had made a statement before a commissioner, and it was found that the substance of the defendant's statement was a general denial of the plaintiff's case, and amounted substantially to the general issue; and hence that the plaintiff should begin and close. The head note in this case, and some expressions in the opinion, go farther than the facts in the case warrant, or the authorities quoted will justify. What the case decides is, that the court will consider the substance of the pleadings more than the form, and will consider what is the substantial fact to be proved, and on whom it rests to prove it; and if the primary burden of proof rests on the plaintiff, he must of course begin, and shall have the right to close. The attention of the court was only called to the issue formed by the defendant's pleading to the

plaintiff's declaration ; and if any thing was in that way left for the plaintiff first to prove, he was entitled, also, to close.

*Seavey* v. *Dearborn*, 19 N. H. 351, was where the defendant justified the acts charged, in his plea, and did not plead the general issue. He thereby admitted all the plaintiff's case, and alleged new matter by way of justification.    To this plea there was a general replication, which threw the primary burden of proof on the defendant, and he was properly allowed to close.

We find no case in this State where the precise question raised in this case has ever been decided.    The question has generally been raised, whether the defendant, by his pleadings, denies the whole or any part of the plaintiff's declaration.    If he does, the plaintiff is entitled to the close.    If he does not, and the plaintiff denies the whole of the defendant's plea, then the affirmative of the issue is on the defendant, and he must begin and close, as in *Seavey* v. *Dearborn*.    *Bills* v. *Vose* is the only exceptional case, and there the burden of proof shifted, but was finally left on the plaintiff on both issues, and he began and closed.

In the case before us the plaintiff states his case in his declaration in such a way that if his statement be admitted, he is entitled to recover.    The defendant, by his plea, admits all the plaintiff's case, but alleges new matter, and says he has a deed of assignment from Winsor Cooper in his life time, conveying all said Winsor's interest in the estate in controversy.    He does not deny any part of the plaintiff's pleading (his declaration), but when he admits that, and alleges the new matter, the burden of proof changes, and it rests on the defendant to prove his new matter (his deed); and when the burden of proof shifted, the right to begin and close, or rather the necessity of beginning and the accompanying right of closing, changed with it, as in *Seavey* v. *Dearborn*.

Now the burden of proof having shifted, and the accompanying right of closing, and they now being with the defendant, he will retain the right of closing until he is relieved from the burden of first going forward and proving his case.    Now, in order to change the burden of proof, and the right to close, the plaintiff must admit the defendant's pleadings, and allege new matter; in other words, his replication must not deny the whole or any part of the defendant's plea ; if he does so, if he leaves any thing which the defendant is obliged to prove in the first instance, he neither relieves him from the burden of proof, or gains the right to close.    In this case the plaintiff does no such thing, but he denies the defendant's deed first, which is the general issue to the defendant's plea, and then he pleads in avoidance, that the deed, if there was one, was obtained by the covin and fraud of the defendant.    By this plea the plaintiff no more relieves the defendant of the burden of proof than a defendant does the plaintiff in a case where he first pleads the general issue to the plaintiff's declaration, and with it new matter in justification or avoidance.    In either case the plea of justification, &c., is not reached until after the general issue is met by affirmative proof. In the case before us, the plea of covin and fraud, the affirmative of which was upon the plaintiff, would never be reached until the

defendant had proved his deed, because the plaintiff denied its execution. If the plaintiff desired the right to close, he should have omitted his plea of *non est factum,* and only pleaded the covin and fraud; then he would have admitted the defendant's case, and would then have had the primary burden of proof on himself, and the right to close.

Woods, J., has stated the rule correctly in *Seavey* v. *Dearborn, supra;* "The general rule that the party having the affirmative of the issue, or the party on whom the burden of proof in the first instance devolves, has the right to open and close at the trial, is the one always referred to on questions of this kind;" and he also lays it down that the party having the primary burden of proof is entitled to its benefit, which is the right to close.

In appeals from the probate court for proving a will, it matters not which party is the appellant. The party who affirms that a will was made has the primary burden of proof, and the accompanying right to close. *Buckminster* v. *Perry,* 4 Mass. 593; *Brooks* v. *Barrett,* 7 Pick. 94. "The right of opening or closing the evidence in a case does not belong either to the plaintiff or the defendant as such, but depends entirely upon which party takes the affirmative of the issue; and a right to rest on a *primâ facie* showing is mutual and belongs as well to a defendant as a plaintiff." *Gass* v. *Turner,* 21 Vt. 440.

The English authorities are generally in accordance with this doctrine, but there are some *nisi prius* cases which are contradictory, and are of no great weight, since they were most of them made when it was considered a matter entirely within the discretion of the court to allow one party or the other to open and close, as was thought most convenient in each case; and no exception to the ruling was allowed. These authorities are, however, considered of little weight in their own country now. *Denman,* C. J., in *Mercer* v. *Whall,* 5 Ad. & Ellis (N. S.) 447, 465, speaking of this rule, says, "We do not deem it necessary to discuss the numerous cases recently reported from *nisi prius,* for they only prove the unsettled state of judicial opinion on that subject." And in England, it has been recently held that an erroneous ruling with respect to the right to begin and close is ground for a new trial. *Doe, ex dem. Bather* v. *Brayne,* 5 M. G. & Sc. 655. In this case I find in the note on pages 658, 659, a manuscript case cited, which is in point, *Ward* v. ——, before *Burrough,* J., at the Dorchester Assizes, July, 1823. The case is thus stated: "In replevin, where the defendant avowed under a lease from the plaintiff, to which the plaintiff pleaded *non est factum,* and also other pleas, the proof of which lay on the plaintiff, the defendant was held to be entitled to begin, inasmuch as the other issues were immaterial until the existence of the lease was established." So in the case before us, the plea that the deed was obtained by covin and fraud is entirely immaterial, and does not arise, and can not, until the defendant has proved the existence of his deed. And until he did that, there was nothing else to be done, and without that, the plaintiff was entitled to a verdict without regard to the other issue.

I find a rule laid down in *Huckman* v. *Fernie*, 2 Jurist (Exch.) 444, that to determine which party is to begin (and of course, which shall close), is to consider which would get the verdict if no evidence were given on either side, and the right to begin is with the one who would in that way lose his case. The same rule is laid down in *Veiths* v. *Hogge*, 8 Clarke (Iowa) 163. However often the burden of proof might change in the course of the trial, this would seem a sure rule by which to ascertain on whom rested the primary burden of proof; and wherever that burden rests, there the accompanying right to close will follow. *Robinson* v. *Hitchcock*, 8 Met. 64.

I am aware that in England certain cases or classes of cases are excepted from the operation of this general rule, or rather they have as a special rule, that "in actions for libel, slander, and injuries to the person, the plaintiff shall begin, although the affirmative issue is on the defendant." The reasons which led to the adoption of this rule in England are stated by *Denman*, C. J., in *Mercer* v. *Whall*, before cited, though the rule itself was announced long before that by *Tindall*, C. J., in *Carter* v. *Jones*, 6 Car. & P. 64. No such rule in relation to these classes of cases has ever been made, to our knowledge, in this State, nor has any such practice prevailed.

The defendant opened his case by his evidence. He was obliged to do so, or lose his case. He should also have been allowed the close. But will the verdict be set aside for this error in the ruling? That question has not been settled in this State. In *Belknap* v. *Wendell, supra*, it was said that, as the ruling at the trial was right, the question whether the privilege of opening and closing was a right, or whether it was a matter within the discretion of the court, did not arise. In Connecticut it has been held that it was a matter entirely within the discretion of the court, and that an error in this matter is no ground of exception or for a new trial. *Comstock* v. *Haldyme*, 8 Conn. 261; *Scott* v. *Hull*, 8 Conn. 303.

So was the early holding in England, as we have seen. But in Massachusetts it has been held that the opening and closing were a matter of right, and that a verdict will be set aside for an error in this particular; *Davis* v. *Mason*, 4 Pick. 136 ; *Sawyer* v. *Merrill*, 6 Pick. 480; and such seems now to be the better opinion in England. And although the question has not been solemnly adjudicated in this State, yet in all our cases the matter of opening and closing is spoken of as the right of one party or the other ; and we think that a holding that the whole matter was entirely within the discretion of the presiding justice would strike the members of the bar of the State generally with some surprise, as being contrary to their notions of the law on that subject. It is often a matter of as much consequence to a party to have the closing argument as it is to have a question of law ruled in his favor; and if the ruling is wrong in either case, we can not say that the party has not suffered in consequence of such error. We think that for this cause the verdict must be set aside.

If, upon another trial, the plaintiff should withdraw his plea of *non est factum*, and thus secure to himself the right to close, the statements of Wood and others bearing upon the state of mind of Winsor Cooper when he made the assignment, might become imma-

terial, as also might the testimony to contradict Frost. But if the pleadings should remain as they are, these questions might again arise and become material. We think the evidence of Wood was properly admitted, on the ground upon which it was offered, if accompanied by proper instructions that it was to be considered only as showing the state and condition of Winsor Cooper's mind, and not as evidence that the statements he made were true, or that Stone ever made any such statements to him as he related. These statements of Winsor Cooper are not to be received as the admissions of Stone, or evidence of any thing whatever except of the state of Winsor Cooper's mind at the time he made them.

It does not appear distinctly whether the testimony offered to contradict Frost was competent or not, because the case does not show what Frost's statements were. It is said that he stated what took place at the time of the assignment, &c., "and as to the said Winsor Cooper's condition and mental capacity at the time." Now if Frost stated that Cooper then appeared rational, and regular, and competent, &c., if he gave the jury to understand by what he said that he supposed said Cooper to be every way competent to make a valid deed, no matter in what particular words it was expressed, then the testimony admitted was clearly competent to contradict him. So far as we can judge from the case, we presume this evidence was properly admitted.

It appears from the case that the court, after the closing arguments of counsel, and after the charge and instructions of the court to the jury, ruled out all the evidence that had been admitted subject to the defendant's exception of Winsor Cooper's statements, such as the testimony of Wood and others, and also the evidence introduced to contradict Frost. There must have been something very extraordinary in the circumstances of the case to have warranted this proceeding on the part of the court, unless it was assented to by both parties, which was not the case here. What these extraordinary circumstances were we are not informed, but we must presume that they were sufficient to warrant the course pursued, as we think it must be a matter within the discretion of the court to rule out evidence, when it is found to have been improperly admitted; but ordinarily this should be done before the closing arguments of counsel or the charge of the court. There must be extraordinary circumstances in the case to warrant a different course.

We think the instructions given were correct, and that those asked for were properly refused. If the jury found that Stone made the representation alleged in regard to his knowledge concerning the will, then the statement was material, and the only question for the jury was as to its being false and fraudulent. The real question was, whether Stone practiced fraud upon said Cooper, by which he was induced to execute the assignment. But the instructions were sufficiently favorable to the defendant on that point. Either Cooper or his administrator might, on the discovery of the fraud, rescind the contract, but it must be rescinded immediately upon such discovery. If Cooper did not discover it in his lifetime, then his administrator, upon such discovery, might rescind or ratify; he could not do both;

and, if he elected to rescind, he could only do so by placing the defendant in the same position in which he was before, as near as might be. But the defendant can not complain, if he obtained the deed by fraud and then kept said Cooper in ignorance of it till he had expended all the money he received, and then died, and an amount of money belonging to the estate of said Cooper had come into his hands larger than the amount he had so paid, that said administrator should insist that the defendant should be paid the sum thus advanced from the funds then in his hands. The demand was well enough. It was no excuse to the defendant for not paying what was honestly due, that a larger sum was demanded.

The only question that arises upon the form of the demand, is one of fact, which the jury must have settled in finding their verdict, and must pass upon again if the cause is again tried. If the plaintiff, when he made the demand and brought the suit, intended to make the defendant pay over the whole money in his hands, without either paying him or allowing him to deduct the sum advanced to Cooper, then there was no rescission of the contract, and the plaintiff can not maintain this suit. But the jury must have found, under proper instructions from the court, which are presumed to have been given, that the plaintiff intended, by what he did and said, to rescind the contract, and that the defendant so understood it; and that this election to rescind was made seasonably — as soon as the fraud was discovered; and if another jury should find these facts all in the same way, then the form of the demand was not material, and was, we think, sufficient.

But for the reason before mentioned, the verdict is set aside, and there must be

*A new trial.*